**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

**BILLY M. ESKRIDGE,**

**Petitioner,**

**v.**                                                    **Case No. 5:13-cv-22189**

**J. PATRICIA WILSON SMOOT,
Acting Chairman, U.S. Parole
Commission, et al.**

**Respondent.[1]**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, (ECF No. 2), and Respondent's Response, wherein Respondent moves for the petition to be dismissed, (ECF No. 13). This case is assigned to the Honorable Irene C. Berger, United States District Judge, and was referred to the undersigned United States Magistrate Judge by Standing Order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3). For the reasons that follow, the undersigned respectfully

---

[1] Eskridge initially named former United States Parole Commission Chairman Isaac Fulwood, Jr., as Respondent. Following Isaac Fulwood's retirement from the United States Parole Commission, J. Patricia Wilson Smoot was named Acting Chairman of the United States Parole Commission. Pursuant to Federal Rule of Civil Procedure 25(d), J. Patricia Wilson Smoot will be substituted as Respondent in this case. Generally, the proper respondent in a § 2241 action is the petitioner's custodian, i.e. the warden of the institution where the petitioner is imprisoned. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004). However, as demonstrated by some of the cases cited throughout this PF&R, federal courts have reached the merits of § 2241 actions brought by petitioners against the United States Parole Commission. In addition, the undersigned notes that Eskridge included the phrase "et al." in the caption of his petition, yet named only Isaac Fulwood as a respondent. (ECF No. 2 at 1).

**RECOMMENDS** that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 be **DENIED**, that Respondent's request for dismissal be **GRANTED**, and that this action be **DISMISSED**, with prejudice, and removed from the docket of the Court.

## I.   <u>Procedural History</u>

Petitioner Billy M. Eskridge ("Eskridge") is currently an inmate at the Federal Prison Camp in Butner, North Carolina. (ECF No. 29 at 1). At the time that he filed his § 2241 petition, Eskridge was a prisoner at the Federal Prison Camp in Beaver, West Virginia.[2] (ECF No. 2 at 1). On January 25, 1967, Eskridge was sentenced by the United States District Court for the Western District of Oklahoma to an aggregate prison term of twenty-two years, five months, and twenty-one days (hereinafter referred to as his "original sentence"). (ECF No. 13-1 at 4, 36). Since then, Eskridge has been paroled a number of times and had his parole revoked a number of times. As relevant to the instant petition, Eskridge was paroled by the United States Parole Commission ("UPSC") in September 1990 with 5958 days remaining on his federal sentence. (*Id.* at 23). On October 16, 1992, the USPC issued a parole violator warrant for Eskridge, and on February 19, 1993, the parole violator warrant was executed. (*Id.* at 12, 24). On November 29, 1993, Eskridge pleaded guilty to bank fraud in the United States District Court for the Southern District of West Virginia. *United States v. Eskridge*, 5:93-cr-00246, ECF No. 69 at 3. On March 7, 1994, Eskridge was sentenced to fifty-seven months' imprisonment on the bank fraud conviction,[3] which was to run consecutive to any previous federal or state sentence, and five years of supervised release. (ECF No. 13-

---

[2] Although Eskridge has been transferred to a federal prison outside of the Southern District of West Virginia, this Court retains jurisdiction over his habeas petition. *See Padilla*, 542 U.S. at 441.

[3] By the time of Eskridge's guilty plea to bank fraud, the Sentencing Reform Act of 1984 ("SRA"), 18 U.S.C. § 3551 *et seq.*, had been enacted. The SRA effectively "eliminated parole in the federal system" for any new sentences. *Peugh v. United States*, ____ U.S. ____, 133 S. Ct. 2072, 2079, 186 L.Ed.2d 84 (2013).

1 at 10-11, 25-27). On April 25, 1994, the USPC revoked Eskridge's parole and forfeited the time that he spent on parole. (*Id.* at 30). Less than two weeks later, on May 5, 1994, Eskridge was reparoled by the USPC . (*Id.* at 13, 30, 33). The parole certificate stated that Eskridge was being reparoled "to the consecutive non-parolable sentence only." (*Id.* at 33). Accordingly, the USPC was allowing Eskridge to serve time on parole for his original sentence at the same time that he was serving his new sentence for the bank fraud offense. At that time, Eskridge's original sentence had a balance of 5517 days. (*Id.*)

On June 26, 1998, Eskridge completed his fifty-seven month sentence. (*Id.* at 10-11). At that point, Eskridge began his term of supervised release and remained on parole for his original sentence. (*Id.* at 36). On October 9, 2001, the USPC issued a warrant for Eskridge's arrest after he failed to report to his parole supervision officer and was charged with committing criminal offenses in Virginia. (*Id.*) The following month, Eskridge pleaded guilty in Virginia state court to uttering and false pretenses, and he was sentenced to five years' imprisonment with two years and six months suspended. (*Id.* at 37). The USPC executed the October 2001 warrant in September 2003, after Eskridge was released from state custody in Virginia. (*Id.* at 6). On October 7, 2003, the USPC revoked Eskridge's parole after finding that Eskridge had violated his conditions of release by failing to report for supervision and committing state crimes. (*Id.* at 38). The USPC ordered that **none** of the time Eskridge spent on parole would be credited toward his original sentence, including the fifty-seven months spent in federal prison on the bank fraud conviction. (*Id.*) The USPC further ordered that Eskridge serve twenty-six months' imprisonment and be reparoled on January 27, 2004. (*Id.*) Eskridge was reparoled in January 2004 with 5376 days left on his original sentence. (*Id.* at 40).

On May 10, 2011, Eskridge's parole was again revoked based on new convictions.

(*Id.* at 44). The USPC ordered that any time spent on parole would be forfeited and that Eskridge must continue his sentence until expiration. (*Id.*) Eskridge appealed that decision to the USPC's National Appeals Board, and on August 17, 2011, the National Appeals Board affirmed the decision. (*Id.* at 45). On April 11, 2013, after conducting a review hearing in Eskridge's case, the USPC ordered no change in its decision to continue Eskridge to the expiration of his sentence. (*Id.* at 46).

On August 23, 2013, Eskridge filed this § 2241 petition asserting that the USPC should have credited him fifty-seven months on his original sentence for the time that he spent on parole in federal prison while serving his bank fraud sentence. (ECF No. 2 at 7). Put simply, Eskridge contends that the USPC erred by adding the fifty-seven months back on to his original sentence. In making the argument, Eskridge distinguishes between "custodial parole" and "community parole." (*Id.*) He maintains that the USPC cannot forfeit the time he spent on "custodial parole." (*Id.*) For relief, Eskridge requests that the Court order the USPC to "issue credit for the 57 months spent on custodial parole." (*Id.* at 8).

After reviewing the petition, on October 1, 2013, the undersigned ordered Respondent to answer or otherwise respond to the application, setting forth any reason why the relief sought by Eskridge should not be granted. (ECF No. 6). In December 2013, Respondent filed a response, requesting that the petition be dismissed. (ECF No. 13 at 7). In her supporting brief, Respondent asserts that the USPC properly denied credit toward the original sentence for the time that Eskridge spent on federal parole, including the fifty-seven months he served in federal prison. (*Id.* at 4). Respondent argues that the law is well-settled that the USPC may forfeit "street time," or time spent on parole, when a federal parolee has been convicted of a crime while on parole. (*Id.* at

- 4 -

5). In Respondent's view, there is no distinction between "custodial parole" and "community parole" with regard to the USPC's forfeiture authority. (*Id.* at 6-7).

On December 9, 2013, Eskridge filed a motion requesting the appointment of counsel. (ECF No. 14). On December 20, 2013, the undersigned appointed counsel, John Anderson, II, to represent Eskridge in preparing and filing his reply. (ECF No. 17). On April 25, 2014, Eskridge filed a reply memorandum in which he subtly modified his position. Eskridge now maintains that the USPC's forfeiture authority depends upon "who exercised control over the parolee during the period of [confinement]." (ECF No. 26 at 4). According to Eskridge, if a federal parolee is in custody in a federal prison while concurrently on federal parole, then the time spent in federal prison must be credited toward the original sentence even if parole is later revoked. On the other hand, if the parolee is in state custody in a state facility while concurrently on federal parole, then the time spent in state custody may be forfeited and not counted toward the original sentence. (*Id.* at 7-9).

## II.   <u>Discussion</u>

Habeas corpus is the appropriate and exclusive remedy for a prisoner to attack the validity or duration of his confinement. *Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973). Where a prisoner seeks "immediate release or a speedier release" from imprisonment, the sole remedy is a writ of habeas corpus. *Id.* Under federal law, there are different forms of habeas corpus petitions, including 28 U.S.C. §§§ 2241, 2254, and 2255; here, Eskridge seeks relief under § 2241. A habeas corpus petition may be brought under § 2241 to challenge the "execution" of a sentence, rather than the sentence itself. *United States v. Little*, 392 F.3d 671, 679 (4th Cir. 2004). Typical challenges to the execution of a sentence under § 2241 include "the

administration of parole" and "computation of a prisoner's sentence by prison officials."

*Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001). In order to be entitled to habeas

relief under § 2241, a prisoner must demonstrate that "[h]e is in custody in violation of

the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). With

these principles in mind, the undersigned turns to the specific issue raised by Eskridge's

petition.

As discussed above, Eskridge insists that he is entitled to fifty-seven months'

credit toward his original sentence given that the USPC impermissibly forfeited the time

he spent on parole in a federal prison serving his new sentence. To support his position,

Eskridge points to a Conference Report issued by the United States House of

Representatives in 1976, which discusses the USPC's authority under 18 U.S.C. §

4210(b)(2) to forfeit time a parolee spent on parole when he is convicted of another

criminal offense. (ECF No. 26 at 4-5) (citing H.R. Conf. Rep. No. 94-838, at 32 (1976)).

Eskridge relies on the following language contained in that report:

> This subsection [18 U.S.C. 4210(b)(2)] also provides that an individual
> whose parole has been revoked upon conviction of any new criminal
> offense that is punishable by a term of detention, incarceration or
> imprisonment in any penal institution shall receive no credit for service of
> his sentence from the day he is released on parole until he either returns to
> Federal custody following completion of any sentence of incarceration or
> upon the Commission determining that the sentence run concurrently
> with any new sentence that may have been imposed, pursuant to section
> 4214(b) or (c) of this Act. In computing the date of expiration of the
> sentence, the Commission shall take into account the time the parolee
> previously served in connection with the original offense at commitment
> prior to his release on parole together with the time served for such offense
> following his revocation and the time together shall not be longer than the
> maximum term for which he was sentenced in connection with the original
> offense.

H.R. Conf. Rep. No. 94-838, at 32 (1976). Eskridge interprets this language to mean that

when a federal parolee is returned to federal custody for any reason, while he is in

federal custody, he should receive credit toward his original sentence. Consequently, because Eskridge was in a federal prison serving his fifty-seven month sentence while also on "custodial parole," the USPC cannot forfeit that time. (ECF No. 26 at 4-5). Eskridge concedes that the statutory language itself, 18 U.S.C. § 4210(b)(2),[4] and the USPC's interpretation of the statutory language, 28 C.F.R. § 2.52(c)(2),[5] do not make the distinctions between "custodial parole" and "community parole" and between federal custody and state custody that Eskridge urges the Court to accept in this case. Nevertheless, he contends that these distinctions have been made by other courts. Specifically, Eskridge relies on a 1988 decision by the United States Court of Appeals for the Second Circuit articulated in *Weeks v. Quinlan*, 838 F.2d 41 (2d Cir. 1988). (ECF No. 26 at 5-7).

---

[4] 18 U.S.C. § 4210(b)(2) provides:

> [I]n the case of a parolee who has been convicted of any criminal offense committed subsequent to his release on parole, and such offense is punishable by a term of imprisonment, detention or incarceration in any penal facility, the Commission shall determine, in accordance with the provisions of section 4214(b) or (c), whether all or any part of the unexpired term being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new offense, but in no case shall such service together with such time as the parolee has previously served in connection with the offense for which he was paroled, be longer than the maximum term for which he was sentenced in connection with such offense.

[5] The USPC's interpretation of 18 U.S.C. § 4210(b)(2), contained in 28 C.F.R. § 2.52(c)(2), states:

> It is the Commission's interpretation of 18 U.S.C. 4210(b)(2) that, if a parolee has been convicted of a new offense committed subsequent to his release on parole, which is punishable by any term of imprisonment, detention, or incarceration in any penal facility, forfeiture of time from the date of such release to the date of execution of the warrant is an automatic statutory penalty, and such time shall not be credited to the service of the sentence. An actual term of confinement or imprisonment need not have been imposed for such conviction; it suffices that the statute under which the parolee was convicted permits the trial court to impose any term of confinement or imprisonment in any penal facility. If such conviction occurs subsequent to a revocation hearing the Commission may reopen the case and schedule a further hearing relative to time forfeiture and such further disposition as may be appropriate. However, in no event shall the violator term imposed under this subsection, taken together with the time served before release, exceed the total length of the original sentence.

In *Weeks*, the petitioner "filed a habeas corpus petition seeking credit on his federal sentence for the 25 months that he served in state prison after federal authorities released him from federal prison to state authorities." 838 F.2d at 42. Petitioner Weeks was convicted of a federal crime and state law crimes one month apart, and was sentenced to prison in both federal court and state court. He was placed in federal custody to serve the federal sentence first. After serving three years of his federal sentence, Weeks was paroled by the USPC to a state law detainer pursuant to 28 C.F.R. § 2.32(a)(1). *Id.* at 42-43. He then served twenty-five months in state prison and was released, still on federal parole. *Id.* at 43. Shortly thereafter, Weeks committed two more state law crimes and was sentenced to eight years' imprisonment. *Id.* Learning of Weeks's new state law convictions, the USPC revoked his parole and denied him credit for all of the time that he spent on parole, including the twenty-five months spent in state prison. *Id.* Weeks then filed a petition for habeas corpus, arguing that the time that he spent in state prison was not time "on parole," and consequently, the USPC could not forfeit that twenty-five months. *Id.* The district court denied relief, and the Second Circuit affirmed. *Id.* at 43, 47.

On appeal to the Second Circuit, Weeks reiterated his position that parole to a state detainer "is not parole at all, but merely a continuation of federal confinement, because 'parole' implies a decision to release an inmate to the community." *Id.* at 45. Beginning its analysis, the Circuit Court recognized that "under the provisions of 18 U.S.C. § 4210(b)(2), the Parole Commission may revoke the parole of any parolee convicted of a new offense punishable by imprisonment, and may order that no credit be received for time served after the date of release on parole." *Id.* at 44. Addressing the specific argument raised by Weeks, the court declared:

> In this case, when the federal authorities released Weeks to the state prison, they effectively relinquished all control over him. The moment that the state assumed physical control of Weeks, it was the state, as a separate sovereign, that had the power to decide the ultimate date of his release. Thus, since the federal authorities no longer exercised any control over Weeks' imprisonment, the subsequent confinement in a state prison cannot be considered a continuation of federal confinement.

*Id.* at 46 (citation omitted). The Court explained that "the essence of parole is release from an obligation to serve time in prison." *Id.* Therefore, even if the parolee is incarcerated on an unrelated charge during the period of parole, he is still "on parole" because he is not in prison serving his original sentence. Moreover, recognizing that the USPC's decision to parole Weeks to a state detainer benefitted him by allowing him to begin serving his state sentence at an earlier date than if he were required to serve his full federal sentence, the Court noted that allowing the petitioner to "repudiate [this] benefit . . . would do violence to the purpose and intent of the Parole Act." *Id.* at 47.

Ignoring the main thrust of the *Weeks* case, Eskridge instead focuses on a distinction made by the Second Circuit between federal control and state control. Eskridge argues that, during the fifty-seven months he spent in federal prison for bank fraud, "federal authorities exercised exclusive control over both [his] release and subsequent confinement," and therefore, he should be given credit for that time toward his original sentence. (ECF No. 26 at 7). He maintains that time spent in federal prison as both a federal parolee and federal prisoner cannot be forfeited by the USPC upon revocation of parole because "federal authorities" do not "relinquish[] all control over the prisoner" in such a situation. (*Id.* at 6) (markings omitted).

While Eskridge is correct that the Second Circuit made a distinction in *Weeks* between federal and state control, that distinction pertained solely to Weeks's argument that parole to a state detainer constituted continued "federal confinement." 838 F.2d at

46. The Second Circuit explained that the state and the federal government were "separate sovereigns;" therefore, Weeks was no longer under federal control when he was released to the state detainer. Notwithstanding the creativity of Eskridge's argument, that portion of the *Weeks* decision is simply inapposite to the factual scenario in this case. However, the decision is useful in that it confirms that "the essence of parole is release from an obligation to serve time in prison," not release to the community. *Id.* at 46. Here, Eskridge was released from his obligation to serve time in prison for his *original sentence* when he was paroled by the USPC to serve the fifty-seven month federal sentence for bank fraud. Thus, Eskridge was on federal parole for his original sentence while serving the fifty-seven months; ***he was not serving federal prison time for his original sentence***. The parole continued after expiration of Eskridge's fifty-seven month sentence, so he was released to the community for the remainder of his parole. As such, the federal government had relinquished custodial control over Eskridge on his original sentence from the time he was paroled in 1994 all the way up until his parole was revoked in 2003. Clearly the USPC's decision to parole Eskridge while he served the fifty-seven month sentence offered him both a benefit and an incentive: Eskridge would be able to serve his fifty-seven month sentence without serving additional time on his original sentence *and* would retain the benefit of parole so long as he refrained from committing any new crimes after finishing his fifty-seven month sentence. Unfortunately, neither the benefit nor the incentive gave Eskridge pause as he committed more state law crimes in 2001.

Other than *Weeks*, which is distinguishable and ultimately does not aid his position, Eskridge has cited no case law, precedential or otherwise, to support his claim. At first blush, Eskridge's citation to the legislative history of the "street time" forfeiture

statute, 18 U.S.C. § 4210(b)(2), appears to support his position, particularly the portion stating that "an individual whose parole has been revoked upon conviction of any new criminal offense that is punishable by a term of detention, incarceration or imprisonment in any penal institution shall receive no credit for service of his sentence from the day he is released on parole until he . . . *returns to Federal custody following completion of any sentence of incarceration.*" H.R. Conf. Rep. No. 94-838, at 32 (emphasis added). While legislative history may be useful when interpreting a statute, *In re Crescent City Estates, LLC*, 588 F.3d 822, 827 (4th Cir. 2009), Eskridge reads too much into the report. The Conference Report does not explicitly prohibit the USPC, upon revocation of parole, from denying credit for time spent on parole while serving a separate federal prison sentence. To the contrary, the report makes no distinction between federal crimes and state crimes, and does not foreclose the possibility that a parolee may be treated differently depending on the *way* in which he returns to federal custody: to serve the parole violator sentence (in this case, the original sentence) or to serve a federal prison sentence for a separate federal conviction (in this case, the fifty-seven month sentence). When viewing the report's language in the most logical context, the report plainly contemplates the forfeiture of all time accumulated from the date that parole is granted until the return of the federal parolee to federal custody *for the conviction and sentence underlying the term of parole.*

        In this case, Eskridge was not returned to federal custody for his original sentence until the parole violator warrant was executed in September 2003. While it is true that Eskridge was in a federal prison for the duration of his fifty-seven month sentence, he was not in federal custody for the purpose of serving his original sentence. Accordingly, all of the time between his release on parole in 1994 and his return to

custody for violating parole in 2003 was subject to forfeiture. Any other interpretation leads to an untenable result. If Eskridge's view of the legislative history is correct, then federal parolees who commit a new federal crime and are reparoled to serve a new federal sentence would be treated more favorably than federal parolees who commit a new state crime. Basically, it would be more advantageous for a federal parolee to commit a new federal crime since the time spent in federal prison for the new crime could not be forfeited if parole is later revoked. Conversely, a federal parolee who commits a new state crime would have the time spent in state prison for that crime subject to forfeiture if parole is later revoked. Eskridge has failed to offer any reasonable basis for such a discrepancy, and the undersigned can discern none.

Other courts that have addressed similar factual scenarios have found no fault in the USPC's refusal to credit time spent in federal prison on a separate federal conviction upon revocation of parole. For example, in *Dietz v. United States Parole Comm'n*, 260 F. App'x 763, 764-65 (6th Cir. 2008), the Sixth Circuit affirmed the district court's denial of habeas corpus relief where, upon revocation, the USPC ordered the forfeiture of the petitioner's time spent on parole, including time that he spent in federal prison on an unrelated federal conviction. On appeal, the petitioner argued that the USPC "did not follow its own procedures by refusing to credit the period [the petitioner] served in prison on an unrelated federal sentence towards his successfully completed parole time." *Id.* at 766. Specifically, the petitioner cited section 2.52-01(g) of the USPC's Rules and Procedures Manual, which provides that "'[u]pon revocation, credit is to be given a prisoner towards service of his maximum sentence for every day in federal confinement not previously credited (including confinement on a warrant later withdrawn; and confinement on an improperly executed warrant, whether or not the prisoner was also

in state or local custody).'" *Id.* at 768 (quoting United States Parole Commission Rules and Procedures Manual § 2.52-01(g) (2003)).[6] Preliminarily, the Sixth Circuit noted that the USPC's "procedures create no enforceable rights." *Id.* at 767. Reaching the merits of the petitioner's argument, the Sixth Circuit reasoned that the petitioner's interpretation of section 2.52-01(g) as requiring credit toward his original sentence for the time spent in federal prison on a separate sentence conflicted with 28 C.F.R. § 2.52(c)(2) and "the statutory scheme." *Id.* at 768. In discussing 28 C.F.R. § 2.52(c)(2), the court asserted that the regulation did "not make an exception for the time spent imprisoned pursuant to the new conviction even though [it] contemplate[s] the possibility that such imprisonment could occur." *Id.* Thus, the Sixth Circuit concluded that section "2.52-01(g) [of the USPC's Rules and Procedures Manual] can be reasonably construed as only authorizing credit for time spent in custody due to the execution of a parole violation warrant." *Id.* at 769. Accordingly, the petitioner did not receive credit toward his original sentence for the time spent in federal prison on a separate federal sentence.

*Dietz* is not the only case to recognize the appropriateness of such a forfeiture.[7] In *Smith v. United States Parole Comm'n*, 563 F. App'x 99, 100-03 (3d Cir. 2014), the court noted that the USPC's order denying the petitioner credit for ten years spent in federal prison on a separate federal crime was consistent with 28 C.F.R. § 2.52(c)(2).

---

[6] The USPC's Rules and Procedures Manual was updated in June 2010. However, the language of section 2.52-01(g) in the 2010 Rules and Procedures Manual was not changed. United States Parole Commission Rules and Procedures Manual § 2.52-01(g) (2010).

[7] In *United States v. Newton*, 698 F.2d 770, 771-72 (5th Cir. 1983), the court affirmed the USPC's forfeiture of time spent on parole during a period that included time spent serving a separate federal sentence, and the court did so relying, in part, on the same language from the House Conference Report on which Eskridge relies. However, given the Fifth Circuit's abbreviated summary of the facts and analysis in the *Newton* case, it is unclear whether the time forfeited by the USPC included only the period of time spent on parole outside of federal prison or both the time outside of federal prison and serving the separate federal sentence in federal prison.

Federal district courts have also accepted the USPC's ability to deny credit for time spent in federal prison on a separate federal conviction. *See Uptain v. Halt*, No. 2:06-CV-1051-WKW, 2009 WL 497504, at *1-*2, *4 (M.D. Ala. Feb. 26, 2009) (upholding USPC's forfeiture of "street time" that included time spent in federal prison for a separate federal conviction); *Lawson v. United States Parole Comm'n*, No. 06-158, 2007 WL 2743958, at *1-*2, *7 (W.D. Pa. Sept. 18, 2007) (finding that USPC acted in accordance with parole statute and "street time" forfeiture regulation when it denied petitioner credit toward his parole violator sentence for time spent in federal prison on separate federal sentence); *Jackson v. United States Parole Comm'n*, No. 8:04-CV-03081-AW, 2005 WL 5177980, at *1-*3 (D. Md. Mar. 29, 2005) (rejecting petitioner's argument that he should receive credit toward his parole violator sentence for time spent in federal prison on a separate federal sentence); *Kelly v. Meifee*, No. 02 Civ. 6244, 2003 WL 22845717, at *11-*12 (S.D.N.Y. Nov. 26, 2003) (same). While it is true, as Eskridge points out, that these cases do not address "a federal-state distinction or relinquishment of control," (ECF No. 26 at 8), these courts likely refrained from doing so for good reason—there is no need to, and no basis for, making such a distinction. As mentioned above, the fine parsing Eskridge asks this Court to adopt would reward federal parolees who choose to commit federal crimes rather than state crimes.

Moreover, the federal regulation governing reparole guidelines also supports the undersigned's rejection of Eskridge's position. Subsection (c) of 28 C.F.R. § 2.21 states: "Time served on a new state or federal sentence shall be counted as time in custody for reparole guideline purposes. This does ***not*** affect the computation of the expiration date of the violator term as provided by §§ 2.47(e) and ***2.52 (c)*** and (d)." (emphasis added). This regulation specifically contemplates that time spent in federal prison for a separate

or "new" federal sentence will not affect the calculation of the parole violator sentence under the "street time" forfeiture provision contained in 28 C.F.R. § 2.52(c). Stated another way, the reparole regulation provides that time spent serving a separate federal sentence will not affect the computation of the balance left on the original sentence (or the sentence from which the person was paroled). *Cf. Joiner v. Henman*, 902 F.2d 1251, 1254 (7th Cir. 1990) (holding that "time served on a new sentence must be credited only for purposes of the reparole guidelines."); *Bowen v. United States Parole Comm'n*, 805 F.2d 885, 888 (9th Cir. 1986) (discussing difference between reparole guidelines credit and sentence credit); *Smith v. United States Parole Comm'n*, No. 3:CV-12-2051, 2013 WL 5176749, at *5 (M.D. Pa. Sept. 12, 2013) (recognizing that time spent in federal custody should be counted toward reparole guidelines under 28 C.F.R. § 2.21(c), but not toward satisfaction of original federal sentence pursuant to 28 C.F.R. § 2.52(c)).

In sum, Eskridge was reparoled from a federal sentence to serve a separate consecutive federal sentence in federal prison. He was released from the separate consecutive federal sentence and continued on parole for his original sentence. He violated parole by committing a new state crime punishable by imprisonment, and the USPC revoked his parole and denied him credit for all of the time spent on parole, including the time that he spent in federal prison on the separate consecutive federal sentence. Both 18 U.S.C. § 4210(b)(2) and 28 C.F.R. § 2.52(c)(2) allow this forfeiture, and a number of cases recognize that "a parole violator forfeits his time on parole when he is convicted of a new offense committed subsequent to his release on parole." *United States v. Newton*, 698 F.2d 770, 772 (5th Cir. 1983) (collecting cases); *see also* David J. Oliveiri, Annotation, *Authority of United States Parole Commission to Credit Time Spent on Parole ("Street Time") Toward Sentence to be Served after Revocation of*

*Parole*, 63 A.L.R. Fed. 328, § 3(b) (1983) (supplemented through 2014) (collecting and summarizing cases supporting proposition). Eskridge has offered no compelling reason and no authority for distinguishing between the forfeiture of time spent in state prison and the forfeiture of time spent in federal prison. The USPC gave Eskridge a great opportunity by reparoling him at the same time he served his separate fifty-seven month sentence, which he squandered when he subsequently committed an additional crime while still on parole. Wherefore, for the forgoing reasons, the undersigned **FINDS** that Eskridge is not entitled to the fifty-seven month credit that the USPC denied him.

### III.   <u>Proposal and Recommendation</u>

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** as follows:

1. Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 2) be **DENIED**;

2. Respondent's request for dismissal (ECF No. 13) be **GRANTED**; and

3. That this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such

objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Berger, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner, Respondent, and any counsel of record.

**FILED:** June 4, 2015

Cheryl A. Eifert
United States Magistrate Judge